UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| SHEILA HAWKINS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 04-2126 |
| MACON RESOURCES, INC., | ) |
| Defendant. | ) |

**OPINION**

On July 6, 2004, Plaintiff Sheila Hawkins filed a pro se complaint against Defendant Macon Resources alleging that she was harassed by members of Macon Resources' management team as a result of her race, African-American. Hawkins further alleges she was demoted and ultimately terminated for opposing discriminatory treatment at Macon Resources and for filing a charge of discrimination with the Illinois Department of Human Rights (IDHR). On September 20, 2005, Defendant filed a Motion for Summary Judgment (#17), and the matter is now fully briefed. For the reasons that follow, the Motion for Summary Judgment is GRANTED.

FACTS

Macon Resources provides training programs and support services to assist individuals and families of individuals with developmental disabilities, mental illness, and other similar conditions. Hawkins was employed at Macon Resources from January 1991 through March 2003. From September 1995 through September 2002, Hawkins worked as a classroom instructor. As a

classroom instructor, Hawkins was to provide academic instruction and functional skill training to individuals with a broad range of functioning levels and disabilities.

Hawkins alleges two primary incidents which gave rise to this litigation. On April 9, 2002, Hawkins was assigned to a certain classroom for her duties as a classroom instructor. John Mallaney, Hawkins' supervisor, observed Hawkins speaking with another employee outside of Hawkins' classroom. Mallaney approached Hawkins to ask what she was discussing, and Hawkins informed him she was asking the other employee about checking out a VCR. Mallaney told Hawkins she should only have personal conversations in the break room. Hawkins received no formal or written discipline as a result of this incident. The second incident occurred on April 29, 2002, when Mallaney once again observed Hawkins away from her classroom speaking with another Macon Resources employee. Mallaney again asked Hawkins why she was having the conversation and asked her to return to her classroom. Hawkins told Mallaney she needed to use a nearby shredding machine. Mallaney told Hawkins to use the shredding machine in the mailroom so her shredding activities would not disturb Macon Resources' clients because the shredder was located in a client training area. Hawkins contends she needed to use that specific shredder because of the volume of shredding that needed to be done. Hawkins received no formal or written discipline as a result of this incident either. Prior to these incidents, Hawkins had filed a charge of discrimination against Macon Resources with the IDHR on December 30, 1999. Hawkins alleges that the above described incidents were in retaliation for this filing.

On September 18, 2002, Hawkins filed another charge of discrimination with IDHR based upon the above incidents. On September 27, 2002, Hawkins' job title was changed to day/vocational trainer. As a result of this change, Hawkins' salary and employment benefits did not

change, she continued to work at the same facility, and continued to instruct Macon Resources' clients. On October 28, 2002, Hawkins filed an amendment to her IDHR charge alleging she was demoted in retaliation for opposing discriminatory treatment.

In early 2003, Hawkins was interviewed by WCIA television personnel. WCIA aired a television report on February 6, 2003, depicting portions of the interview with Hawkins. The report alleged that "employees [of Macon Resources] say there is evidence of abuse." This report relied in part on statements made by Hawkins. Hawkins told WCIA that employees of Macon Resources "openly" and "many times" abused and/or neglected clients of Macon Resources. Hawkins relayed one alleged incident where she observed a Macon Resources employee grab a client's neck until the employee "was just squeezing it and just got him down the hallway."

As a result of these allegations, Macon Resources began an investigation. Tammy Nelson and Shirley Paceley, both supervisory personnel at Macon Resources, were assigned to conduct the investigation. On February 11, 2003, Hawkins told Nelson and Paceley that she observed Matt Jackson, a Macon Resources employee, abuse a client in 1999. Hawkins also informed them that she had drafted a written report in 1999 concerning the incidents she discussed with WCIA and sent the report to Kay Scrogin, Macon Resources' executive director. Hawkins indicated she had witnessed no other incidents of abuse or neglect.

On February 13, 2003, Paceley requested copies of any documents Hawkins had in her possession regarding the incident involving Mr. Jackson. On February 21, 2003, Nelson sent a memorandum to Hawkins reminding her that Hawkins had failed to provide the written documentation. Hawkins was warned in the memorandum that if she failed to produce the documentation by February 24, 2003, her actions would be considered insubordination and she could

be discharged. On February 26, 2003, Nelson sent Hawkins another memorandum because she still had received no documentation. In the memorandum, Nelson told Hawkins that her failure to produce the documentation "casts serious doubts on whether [Hawkins was] telling the truth" to WCIA. Nelson extended the deadline to produce the documentation to February 28, 2003. On February 28, 2003, Hawkins told Nelson she did not find the disk on which her documentation was located, but she would continue to look for it.

Hawkins provided no information by March 14, 2003. As a result of her investigation, Nelson determined the allegations Hawkins made to WCIA were not true. Therefore, Nelson wrote the following memorandum to Hawkins:

> In an interview aired on WCIA-TV News on February 6, 2003, you made false claims regarding Macon Resources, Inc. Among those claims, you indicated on air that there were incidences of abuse that occurred "so many times, openly." This allegation you confirmed to be false during our internal follow-up investigation. You also indicated that employees who report abuse at MRI are retaliated against, which is also not true.
> Your false allegations have harmed Macon Resources, Inc.'s credibility with individuals that we serve, families and various stakeholders and members of our community. Accordingly, your employment with MRI is terminated effective immediately.

Hawkins never produced the documentation to Macon Resources. Macon Resources has in place a disciplinary policy which provides for discipline, up to and including immediate termination, if an employee is found being dishonest.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for

summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988). Furthermore, this court is to construe pro se filings liberally. Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001).

To survive summary judgment on a hostile work environment claim, the plaintiff must establish that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe and pervasive enough to alter the conditions of her employment and create a hostile and abusive working environment; and (4) there is a basis for employer liability. Luckie v. Ameritech Corp., 389 F.3d 708, 713 (7th Cir. 2004). When evaluating a hostile work environment claim, this court analyzes the totality of the circumstances, including "the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." Patt v. Family Health Sys., Inc., 280 F.3d 749, 754 (7th Cir. 2002).

Hawkins' claim of racial harassment stems from the two incidents where Mallaney, her supervisor, spoke to her concerning the reasons she was having conversations with co-workers outside of her classroom. On the first occasion, Mallaney told Hawkins to have her personal conversations in the break room and on the second occasion Mallaney told Hawkins to use the paper shredder in the mail room so clients would not be disturbed by the noise. Hawkins received no discipline as a result of either incident. Such conduct can hardly be considered severe, pervasive,

or humiliating. Furthermore, Hawkins has made no showing that this conduct was related to her race, African-American. Accordingly, Hawkins has failed to set forth a prima facie case for racial harassment.

Hawkins also asserts that Macon Resources retaliated against her for filing charges of discrimination with the IDHR by harassing her, demoting her, and ultimately discharging her. In order to establish a claim for retaliation, Hawkins may present direct evidence of a statutorily protected activity, an adverse employment action, and a causal connection between the two. Haywood v. Lucent Tech., Inc., 323 F.3d 524, 531 (7th Cir. 2003). Hawkins may also proceed under the indirect method of proof by showing: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Haywood, 323 F.3d at 531. If Hawkins can establish these elements, the burden shifts to Macon Resources to come forward with a legitimate, non-invidious reason for the adverse employment action. Haywood, 323 F.3d at 531. Once Macon Resources presents a legitimate, noninvidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the reason was pretextual. Haywood, 323 F.3d at 531.

With respect to Hawkins' alleged harassment and demotion, Hawkins cannot succeed under either method of proof because she has failed to demonstrate an adverse employment action. As concerns the allegation of harassment, "mere unhappiness and inconvenience are not actionable under Title VII." Haywood, 323 F.3d at 532. As discussed above, Hawkins suffered no discipline as a result of what Mallaney said. While Hawkins may have viewed Mallaney's statements as

unpleasant, there is simply no basis for this court to find an adverse employment action. As concerns Hawkins' alleged demotion, "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance cannot rise to the level of a materially adverse employment action." Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). "A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either." Williams, 85 F.3d at 274. Furthermore, a change in job title alone is not an adverse employment action. See Grayson v. City of Chicago, 317 F.3d 745, 750 (7th Cir. 2002). Hawkins concedes that after her job title was changed, she continued to receive the same salary and employment benefits, and continued to work at the same location instructing clients of Macon Resources. In her response to the motion for summary judgment, Hawkins alleges that after her change in job title, she was given "the primary duty of 'escorting' clients." However, Hawkins provides no evidentiary support for this assertion. Therefore, this court concludes Macon Resources is entitled to summary judgment on Hawkins' claims of retaliation regarding her alleged harassment and demotion.[1]

Hawkins' claim for retaliatory discharge must also fail. Assuming Hawkins could establish a prima facie case on this claim, Macon Resources has offered a legitimate, non-discriminatory reason for Hawkins' termination and Hawkins has failed to make a showing that this reason is pretextual. Hawkins made an allegation to a local television news reporter that clients of Macon Resources were being abused by employees. Macon Resources asserts that it conducted an

---

[1] Defendant filed a Motion to Strike (#22) a videotape submitted by Plaintiff in response to Defendant's motion for summary judgment. The court has reviewed the videotape and finds the tape irrelevant to the issues on which this court has decided the motion for summary judgment. Accordingly, the Motion to Strike (#22) is denied as MOOT.

investigation into Hawkins' allegations. Hawkins was given several weeks to provide documentation in support of her allegations and was not able to produce it. Thus, Macon Resources determined that Hawkins' allegations were false and she was terminated as a result of Macon Resources' policy which allows for the termination of employees for dishonesty. In response, Hawkins asserts she was terminated because she "spoke up for the individuals who could not speak for themselves." Even if this assertion were true, this allegation has nothing to do with Hawkins' claim of retaliation for filing a charge with the IDHR. "[T]he court is not a super-personnel department intervening whenever an employee feels she is being treated unjustly." Cardoso v. Robert Bosch Corp., 427 F.3d 429, 435 (7th Cir. 2005). Because Hawkins has presented no evidence from which this court could find Macon Resources' proffered reason for her termination to be pretextual, summary judgment is appropriate on this claim as well.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion for Summary Judgment (#17) is GRANTED.

(2) Defendant's Motion to Strike (#22) is denied as MOOT.

(3) The final pretrial conference scheduled in this matter for January 6, 2006, and the bench trial scheduled to begin January 23, 2006, are VACATED.

(4) This case is terminated.

ENTERED this 22nd day of November, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE